## H. S. CANFIELD V. WALTER GRESHAM ET AL.

### No. 6864.

**Power of Legislature to Punish for Contempt.** — The State Constitution provides, article 3, section 15: "Each house may punish by imprisonment during its session any person not a member for obstructing any of its proceedings, provided such imprisonment shall not exceed at any one time forty-eight hours." And section 21: "No member shall be questioned in any other place for words spoken in debate in either house." Under these provisions the House of Representatives had the right to determine whether or not acts of the plaintiff were an obstruction to its proceedings within the meaning of the Constitution; and having so determined, to cause him to be imprisoned for contempt; and for such confinement he has no right of action against the members of the Legislature voting upon such question, nor against the Sergeant-at-Arms executing the order.

APPEAL from Travis. Tried below before Hon. JOHN C. TOWNES. The opinion states the case.

*Walton, Hill & Walton,* for appellant.—The court erred in its charge to the jury in telling them to find a verdict for defendants. The court erred in refusing to grant a new trial, because the court erred in charging the jury as above. The court failed to give the law of the case to the jury, in that the testimony was sufficient, as shown by the state-

ment of facts, to call for a charge submitting the issues made by the pleadings to the consideration of the jury on the facts in evidence. Kilbourne v. Thompson, 103 U. S., 168; 7 Conn., 584; 45 Conn., 382; 16 Colo., 457; 13 La., 780.

A. W. Terrell, E. T. Moore, D. W. Doom, and A. S. Walker, Jr., attorneys for appellees J. C. Carr, Frank P. Alexander, James M. Baird, Robert V. Bell, John C. S. Baird, Amos W. Buchanan, Augerean C. Camp, Samuel J. Chapman, G. C. Clegg, John T. Curry, J. J. Davis, Tom C. Davis, Nelson P. Dolen, James H. Faubion, Martin V. Garner, Hiram M. Garwood, Abe S. Gill, Andrew C. Graves, Walter Gresham, Mat. M. Harrison, Geo. S. Hulling, John P. Humphreys, Thomas M. Hunt, James W. Jarrot, Wm. C. Johnson, J. Ras Jones, W. C. Larkin, Alexander H. Latimer, Geo. T. McGehee, John McCullough Melson, Seth P. Mills, E. T. Moore, R. J. Moore, A. J. Nicholson, A. J. Northington, B. Parks, Geo. W. Patterson, Jonathan Payne, A. C. Prendergast, C. M. Richardson, Joseph C. Rugel, J. F. Saddler, Wm. F. Sharp, L. F. Shields, W. M. Skinner, W. M. Smith, R. E. Steele, John B. Stringer, John H. Truitt, Free A. Utiger, John H. Voorhees, S. E. Waskom, L. A. Whatley, T. A. Wilson, W. L. Wood, John M. Woolsey, James B. Wright.—Members of the Legislature are not responsible in damages for votes cast in their official capacity, and in passing upon questions of contempt or obstruction of legislative proceedings they are not responsible in or to any other tribunal. And the Sergeant-at-arms, who simply acts in an official capacity and obeys simply the official resolutions of the House, whose officer he is, is not responsible in damages for his act. Const., art. 3, sec. 15; Const., art. 3, sec. 21; Raines v. Simpson, 50 Texas, 495; U. S. Const., art. 1, sec. 6; Kilbourne v. Thompson, 103 U. S., 166; Anderson v. Dunn, 6 Wheat., 204; Cool. on Con. Lim., 5 ed., p. 551; Cool. on Torts, pp. 408, 409; Weaver v. Deavendorf, 3 Denio, 117; 8 Wait's Act. and Def., p. 259; Herzog v. Graham, 9 Lea (Tenn.), 152; Rev. Stats., art. 4526; Const., art. 3, sec. 11; Rule 60, House Rep. 20th Leg. (defining duties of Sergeant-at-arms); Burdett v. Abbot, 4 Taunton's Rep., 444.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by appellant against fifty-six members of the House of Representatives of the Twentieth Legislature, and J. C. Carr, its Sergeant-at-arms, to recover damages alleged to have been caused by his unlawful and malicious arrest and imprisonment.

Among other things the defendants pleaded as follows:

"Defendants further say, that early in the session, and because of the interest of the public in the proceedings of said House of Representatives, and in order that such proceedings might be more fully and accurately reported for transmission to the various newspapers publishing

the same, a table for writing and other conveniences was provided in said House of Representatives, within the bar of said House, and to the representatives of the San Antonio Express and other public journals of the State was extended the privilege of a seat at said table for the purposes aforesaid. That plaintiff herein, H. S. Canfield, was at that time the reporter or correspondent of the San Antonio Express, a newspaper published at San Antonio, Texas, and on that account, and for the purposes aforesaid, the said Canfield was permitted to sit at said table.

"The Hall of Representatives and said table were under the control of the members of the House, as said Canfield well knew. That said Canfield did not appreciate the courtesy shown him or the facilities afforded the newspaper he represented; that said Canfield at once devoted himself to misrepresenting the action of the Legislature, and instead of confining himself to correct and true reports and legitimate and accurate statements in his correspondence, the said Canfield proceeded to fabricate and transmit to the San Antonio Express, for publication, and which was published in said paper, a series of sensational, false, defamatory, and slanderous letters, relating not to any matter affecting the public welfare or concerning the official proceedings of said House of Representatives, but to the personal appearance, manners, and habits of certain individual members of said House; said letters being calculated to, and of such nature and so designed as to bring into public odium, infamy, ridicule, and contempt the said House of Representatives and the individual members thereof.

"Defendants further say, that on account of the conduct and purposes of said Canfield in the matter of the correspondence above referred to, which was a breach of the privilege of said House, and a high contempt of the dignity of the chosen representatives of the people, a resolution was offered and duly passed by said House on February 28, 1887, by a vote of 61 yeas to 24 nays, which vote and the names of the members so voting is of record in the journals of said House, which resolution expelled said Canfield from and denied him admission to and the privilege of the hall within which the said House of Representatives was holding its session; a copy of which resolution is hereto attached, marked exhibit B, and made a part of this answer.

"That said Canfield was present in the House of Representatives when said resolution was passed, and had full knowledge thereof and its contents. That afterward, to-wit, on the 1st day of March, A. D. 1887, or about that time, the said resolution still being in force, and the said House of Representatives being in session with open doors, through which the said Canfield could both see and hear if he so desired, he, the said Canfield, notwithstanding said resolution and said rules 49 and 50, and the said Canfield not coming within the exemptions mentioned in said rules, and notwithstanding the further fact that the hall in

which the session was being held was under the control of the House of Representatives, demanded to enter said hall where the House of Representatives was then in session, and against the wishes and over the objections of the assistant Sergeant-at-arms, J. D. Montgomery, he, the said Canfield, forcibly intruded himself into said hall; that the said Montgomery continued to talk to the said Canfield, reminding him of said resolution and protesting against his remaining in the hall, and while so doing the said Montgomery gently laid his hand upon the arm of said Canfield, whereupon the said Canfield walked out of the hall, stating that 'that was all he wanted.'

"Defendants say, that during all this time, from the moment said Canfield sought admittance to the hall down to and including the moment that he left the hall, the said George C. Pendleton was presiding over the deliberations of the House of Representatives, about fifty feet or more distant from said Canfield and Montgomery and the door at which they met, and had no knowledge of anything transpiring at the door between said Canfield and Montgomery.

"That the said George C. Pendleton did not then assault the said Canfield, nor had he before assaulted the said Canfield, nor did he at any subsequent date assault the said Canfield, as he, the said Canfield, then knew and now knows; nor had the said George C. Pendleton ever advised or counseled, suggested or consented, that the said Montgomery or any one else should assault the said Canfield.

"Defendants further say, that notwithstanding the truth of the above allegation, the said Canfield, on the 18th day of March, 1887, for the purpose of obstructing the proceedings of said House, and contrary to truth, did appear at the office of Fritz Tegener, a justice of the peace in and for the county of Travis and State of Texas, and make oath before said Tegener to a written complaint, which charges as follows, in part: 'That he has good reason to believe, and does believe, and charges that George C. Pendleton and —— Montgomery, whose other name but Montgomery is unknown to affiant, on (or about) the first day of March, 1887, in Travis County and State of Texas, did then and there unlawfully and willfully in and upon H. S. Canfield make an assault.'

"Defendants further say, that on the making of the said complaint the said Canfield asked for and procured to be issued for said George C. Pendleton, on March 18, 1887, a warrant of arrest, and requested and procured the arrest of said Pendleton on March 19, 1887, which was in open contempt of the House of Representatives, and of its right to transact legislative business for the people free from molestation, and which was for the purpose of obstructing the proceedings of the House; the said Pendleton being at the time of the arrest a member as aforesaid of the Twentieth Legislature of Texas (which was then in session), and not subject to arrest, as he had not committed treason, felony, or breach of the peace.

"Defendants further say, that on account of the arrest of said Pendleton, procured as aforesaid by the said Canfield, the said Pendleton was forcibly taken away and caused to absent himself from his official duties as a member of the House of Representatives and as Speaker thereof, and was required to attend for trial in answer to said complaint upon the court of said Fritz Tegener, justice of the peace as aforesaid. Defendants say, that said Pendleton was the Speaker of the said House of Representatives, having been selected to that position without opposition, on account of his peculiar fitness, and should have been allowed to remain in the discharge of his official duties as member and Speaker on the said 19th day of March, 1887, but was prevented therefrom by the conduct of the said Canfield, above set out.

"That by the absence of said Pendleton, caused and procured as aforesaid by the said Canfield, plaintiff in this cause, the proceedings of the House of Representatives were obstructed, business was delayed, and a Speaker pro tem. had to be elected to serve in the place of the absent Speaker, and a general dissatisfaction and disturbed state of mind ensued, unfitting the Representatives for calm and deliberate legislation. That because of the obstruction of the proceedings of the House of Representatives, caused as aforesaid by the said Canfield, a resolution was passed by the said House of Representatives, on the said 19th day of March, which is in figures and words substantially as follows:

" 'Whereas, It has come to the knowledge of this House that Hon. George C. Pendleton, Speaker of this House, was to-day arrested by virtue of a warrant of arrest issued by Fritz Tegener, justice of the peace in and for Travis County, Texas, upon the affidavit of H. S. Canfield, charging him, the said George C. Pendleton, with committing an assault, and that the said George C. Pendleton is now detained as aforesaid; therefore, be it

" 'Resolved, That this House refuse to waive the privilege of the said George C. Pendleton as a member thereof, and that this House refuse to permit the said justice of the peace to proceed with the trial of the said Hon. George C. Pendleton, and that he, together with said officer M. V. Crenshaw, be instructed and directed to no longer detain the said Hon. George C. Pendleton, but that he be released at once, that he may attend upon this House as a member thereof.

" '2.    That the said Fritz Tegener, justice of the peace, and M. V. Crenshaw, said officer making such arrest, and the said H. S. Canfield, be required to appear at the bar of the House at once and answer why they should not be committed for contempt as aforesaid; and that upon their failure to do so they be committed to imprisonment for the period of forty-eight hours to purge themselves of said contempt.

" '3.    That the Sergeant-at-arms of this House be instructed and empowered to appoint such number of assistant sergeants as may be deemed necessary to carry out these orders and the process hereof.'

"That in compliance with said last named resolution, J. C. Carr, the Sergeant-at-arms of the said House of Representatives, on said day summoned the said H. S. Canfield and the said Tegener and the said Crenshaw before the said House of Representatives, and upon appearance thereat and explanation by the said Tegener and Crenshaw, which in the judgment of the House purged them of contempt, they, the said Tegener and Crenshaw, were relieved from further attendance or hearing before said House; that upon appearance before the said House by the said Canfield, after he had been given an opportunity to be heard in explanation of his conduct, and after he had admitted, in response to various questions propounded by members of said House, that he had made the complaint against and procured the arrest of the said George C. Pendleton, and after he had admitted in response to said question that the said George C. Pendleton was not present at the time of the alleged assault by said Montgomery, but was at the time presiding over the deliberations of the House; and after he had declined to express any regret for any part of his conduct, the said House of Representatives passed, on said 19th day of March, by legal and requisite number of votes, a certain resolution to imprison the said Canfield for the period of forty-eight hours, for obstructing the proceedings of said House of Representatives, a copy of which resolution is hereto attached, marked exhibit A, and made a part of this answer.

"That the said House of Representatives, in addition to the passage of said resolution, and having reference thereto, did, on the same day and before the said Canfield was to be imprisoned thereunder, in its official capacity and by proper vote, authorize and instruct the Speaker and Chief Clerk of said House to sign such commitment as was necessary to carry out and enforce said resolution.

"That thereafter, on the same day, to-wit, the 19th day of March, 1887, under said authority, the necessary commitment was issued and signed by said Speaker and said Clerk, authorizing and empowering the sheriff of Travis County to receive and imprison the said Canfield in the county jail of Travis County for the period of time mentioned in said resolution; that said resolution and said commitment, duly signed, were received by the said sheriff of Travis County, but defendants allege that the said sheriff utterly failed and refused to execute said resolution and said commitment, or either of them; and they allege that said Canfield was never confined in the county jail of Travis County for any period of time whatever.

"Defendants say, that if Canfield was imprisoned at any other place (which is not admitted, but denied), that such imprisonment was not by authority of them, or of any of them, but was at his own request and at the instance of said sheriff.

"Defendant J. C. Carr alleges that he never imprisoned nor advised the imprisonment of said Canfield at any time or in any way; and all

of the defendants say that each and every act and thing performed and done by them whatever, collectively or individually, was done and performed by them in their said official capacity, and not otherwise, and they should not be held to answer before any other tribunal.

"Defendants further say, that the said complaint made by said Canfield was dismissed by said Tegener before the institution of this suit, and no other complaint has ever been made."

### "EXHIBIT A.

"Resolved, That, whereas the respondent H. S. Canfield is guilty of contempt of this House in obstructing its proceedings, and whereas he has wholly failed to purge himself of said contempt, he be adjudged guilty of said contempt, and that he be imprisoned for the period of forty-eight hours, and that the Sergeant-at-arms of this House be instructed to take the said H. S. Canfield into custody and him confine in the county jail of Travis County, Texas, in obedience to this order."

### "EXHIBIT B.

"Whereas, The San Antonio Express has published repeated communications from the State Capitol reflecting on the intelligence, patriotism, decency, and manliness of the Twentieth Legislature; and

"Whereas, The communication which occurs in the Express of the 27th instant was a culmination of falsehood, indecency, and reportorial mendacity, and a base abuse of the privileges extended by this House to the representatives of the press; therefore be it

"Resolved by the House of Representatives, That we condemn the course of the San Antonio Express in admitting such malignant falsehoods to its columns: And be it further resolved, That H. S. Canfield, who is understood to be the writer of such libelous articles, be excluded from the reporters' table and be expelled from this hall, and that the Doorkeeper and Sergeant-at-arms be instructed to refuse him admittance."

The main facts alleged in the answer were substantially proved on the trial before a jury. It was proved that the plaintiff was actually confined in the jail of Travis County for the space of forty-eight hours.

The court charged of its own motion in these words:

"The plaintiff in this case sues the defendants for damages for false imprisonment.

"The testimony shows that he was imprisoned by J. C. Carr, one of the defendants, and confined in the jail of Travis County. The testimony further shows that in so imprisoning the plaintiff the said Carr was acting under the authority of a writ of commitment issued by the Speaker and Clerk of the House of Representatives of the Twentieth Legislature of the State of Texas for contempt of that body.

"There are no facts in evidence which show the act of the said House to have been void, and the defendants, who are members of said body,

can not be held to respond in damages for their votes in adjudging the plaintiff guilty of contempt and ordering him committed therefor. The writ was a legal justification of defendant Carr in imprisoning the plaintiff.

"You will return your verdict in favor of all the defendants."

There was a judgment in favor of the defendants, from which the plaintiff appealed and assigned the following error:

"The court erred in its charge to the jury in telling them to find a verdict for defendants. The court erred in refusing to grant a new trial, because the court erred in charging the jury as above. The court failed to give the law of the case to the jury, in that the testimony was sufficient, as shown by the statement of facts, to call for a charge submitting the issues made by the pleadings to the consideration of the jury on the facts in evidence."

In the case of Kilbourne v. Thompson, 103 United States, 204, the Supreme Court of the United States, speaking of the effect to be given to the clause in the Constitution of the United States that Senators and Representatives, "For any speech or debate in either house they shall not be questioned in any other place," say:

"It would be a narrow view of the constitutional provision to limit it to words spoken in debate. The reason of the rule is as forcible in its application to written reports presented in that body by its committees to resolutions offered, which though in writing must be reproduced in speech, and to the act of voting, whether it be done vocally or by passing between the tellers. In short, to things generally done in a session of the house by one of its members in relation to the business before it."

Our State Constitution contains the following provisions:

"Each house may punish by imprisonment, during its sessions, any person not a member  *  *  *  for obstructing any of its proceedings; provided, such imprisonment shall not at any one time exceed forty-eight hours."  Const., art. 3, sec. 15.

"No member shall be questioned in any other place for words spoken in debate in either house."  Const., art. 3, sec. 21.

The House had unquestionably the right to determine whether or not the acts of plaintiff were an obstruction to its proceedings within the meaning of the Constitution, and, having so determined, to cause him to be imprisoned as he was.

The command of the House protected the Sergeant-at-arms.

The judgment is affirmed.

                                                    *Affirmed.*

Delivered October 23, 1891.


*W. M. Walton* argued a motion for rehearing. The motion was refused.