FILED IN
COURT OF CRIMINAL APPEALS

October 22, 2015

ABEL ACOSTA, CLERK

PD-1067-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/21/2015 9:08:43 PM
Accepted 10/22/2015 8:11:43 AM
ABEL ACOSTA
CLERK

## NO. PD-1067-15

### IN THE
### COURT OF CRIMINAL APPEALS OF TEXAS

---

### EX PARTE JAMES RICHARD "RICK" PERRY,
### Appellant

---

On Appeal from the 390th Judicial District Court,
Travis County, Texas, Cause No. D-1-DC-14-100139

---

### APPELLANT'S BRIEF ON THE MERITS ADDRESSING
### HIS PETITION FOR DISCRETIONARY REVIEW

---

THE BUZBEE LAW FIRM
Anthony G. Buzbee
State Bar No. 24001820
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tbuzbee@txattorneys.com
Telephone:  713-223-5393
Facsimile:  713-223-5909

BOTSFORD & ROARK
David L. Botsford
State Bar No. 02687950
1307 West Ave.
Austin, Texas 78701
dbotsford@aol.com
Telephone:  512-479-8030
Facsimile:  512-479-8040

BAKER BOTTS L.L.P.
Thomas R. Phillips
State Bar No. 00000102
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4078
tom.phillips@bakerbotts.com
Telephone:  512-322-2565
Facsimile:  512-322-8363

### ORAL ARGUMENT PREVIOUSLY SCHEDULED BY THE COURT

## Identity of Judge, Parties, and Counsel

The following is a complete list of the names and addresses of all parties and counsel in this case.

Trial Judge: Honorable Bert Richardson, sitting by appointment; Court of Criminal Appeals, Supreme Court Building, 201 West 14th Street, Austin, Texas, 78701.

Appellant: Former Governor James Richard "Rick" Perry, c/o Anthony G. Buzbee, JPMorgan Chase Tower, 600 Travis Street, Suite 7300, Houston, Texas, 77002

Appellant's Counsel:  Anthony G. Buzbee, JPMorgan Chase Tower, 600 Travis Street, Suite 7300, Houston, Texas 77002; Thomas R. Phillips, 98 San Jacinto Blvd., Suite 1500, Austin, Texas 78701-4078; and David L. Botsford, 1307 West Avenue, Austin, Texas, 78701 (Lead Counsel on Appeal).

State of Texas:  Attorney Pro Tem Michael McCrum, 700 N. Saint Mary's Street, Suite 1900, San Antonio, Texas 78205; Assistant Attorney Pro Tem David Gonzalez, 206 East 9th Street, Suite 1511, Austin, Texas, 78701.

# Table of Contents

Identity of Judge, Parties, and Counsel.................................................................. i

Index of Authorities ...................................................................................... iv

Statement of the Case......................................................................................1

Grounds for Review .........................................................................................3

Statement of the Facts ......................................................................................4

Summary of the Argument................................................................................7

Argument......................................................................................................10

    I.       Governor Perry's Claims Are Properly Cognizable ...........................10

          A.     The Standard of Review is De Novo. ..................................... 10

          B.     The court of appeals misunderstood this Court's approach to the cognizability of pretrial habeas claims........... 11

               1.     This Court's approach to cognizability is functional. ......................................................................11

               2.     The court of appeals adopted an erroneous "label-driven" approach to deciding cognizability....................15

          C.     Under an appropriate analysis, all of Governor Perry's claims are cognizable............................................... 18

               1.     All of Governor Perry's challenges are the functional equivalent of a facial attack on Section 39.02(a)(2). ......................................................18

                2.     The key reasons to permit pretrial habeas review are all present here.........................................20

                     a.     Governor Perry's challenges can be resolved on the face of the indictment. ..............................20

b.     Governor Perry's challenges to the State's right to try him at all can only be vindicated in pretrial proceedings. ...........................................21

c.     Important policy considerations compel a pretrial resolution of Governor Perry's constitutional challenges to the indictment. .........22

3.     Habeas review is cognizable under the state of the record as recognized by the court of appeals .................23

D.     If necessary, this Court should extend an exception to the cognizability doctrine ............................................. 29

II.     The State's prosecution of Governor Perry is unconstitutional ..........30

A.     This prosecution violates the constitutional separation of powers ........................................................... 31

B.     Count I violates the Texas Speech or Debate Clause and the common-law doctrine of legislative immunity .................. 37

C.     The abuse of official capacity statute is unconstitutionally vague as applied to the veto alleged on the face of the indictment............................................................ 45

Prayer for Relief..............................................................................48

Certificate of Compliance ...............................................................49

Certificate of Service .......................................................................49

TAB 1, Nine Claims Challenging Count I............................................50

iii

# Index of Authorities

**Page(s)**

**CASES**

*Abney v. United States,*
431 U.S. 651 (1977)..................................................................................44, 45

*Armadillo Bail Bonds v. State,*
802 S.W.2d 237 (Tex. Crim. App. 1990) ...........................................................32

*Baker v. Carr,*
369 U.S. 186 (1962).........................................................................................35

*Baraka v. McGreevey,*
481 F.3d 187 (3d Cir. 2007) .............................................................................42

*Barnes v. Secretary of Admin.,*
586 N.E.2d 958 (Mass. 1992) ...........................................................................34

*Bogan v. Scott-Harris,*
523 U.S. 44 (1998)...........................................................................34, 40, 42, 43

*Bowles v. Clipp,*
920 S.W.2d 752 (Tex. App.—Dallas 1996, writ denied) ...................................38

*Camacho v. Samaniego,*
954 S.W.2d 811 (Tex. App.—El Paso 1997, pet. denied)..................................40

*Canfield v. Gresham,*
17 S.W. 390 (Tex. 1891)..............................................................................38, 39

*Coffin v. Coffin,*
4 Mass. 1 (1808) ..............................................................................................38

*Coleman v. Miller,*
307 U.S. 433 (1939)..........................................................................................34

*Cook v. State,*
902 S.W.2d 471 (Tex. Crim. App. 1995) ...........................................................32

*Cuellar v. State,*
70 S.W.3d 815 (Tex. Crim. App. 2002) .............................................................47

*D'Amato v. Superior Court,*
    167 Cal. App. 4th 861 (2008) ................................................................42

*Doe v. McMillan,*
    412 U.S. 306 (1973)................................................................38, 39, 41

*Dombrowksi v. Eastland,*
    387 U.S. 82 (1967)................................................................21, 22, 45

*Ex parte Boetscher,*
    812 S.W.2d 600 (Tex. Crim. App. 1991) .......................................14, 21, 23, 24

*Ex parte Brown,*
    158 S.W.3d 449 (Tex. Crim. App. 2005) ................................................10

*Ex Parte Doster,*
    303 S.W.3d 720 (Tex. Crim. App. 2010) ..............................................12, 14

*Ex parte Elliott,*
    973 S.W.2d 737 (Tex. App—Austin 1998, pet. ref'd) ..............................13, 37

*Ex Parte Ellis,*
    309 S.W.3d 71 (Tex. Crim. App. 2010) ...........................................12, 18, 19

*Ex parte Ferdin,*
    183 S.W.2d 466 (Tex. Crim. App. 1944) .................................................35

*Ex parte Giles,*
    502 S.W.2d 774 (Tex. Crim. App. 1974) .................................................32

*Ex parte Gill,*
    413 S.W.3d 425 (Tex. Crim. App. 2013) ..............................................13, 32

*Ex parte Halsted,*
    182 S.W.2d 479 (Tex. Crim. App. 1944) .................................................32

*Ex parte Humphrey,*
    244 S.W. 822 (Tex. Crim. App. 1922) ...............................................13, 37

*Ex parte Leslie,*
    223 S.W.2d 227 (Tex. Crim. App. 1920) ..............................................13, 37

*Ex parte Lo*,
424 S.W.3d 10 (Tex. Crim. App. 2013) .......................................................11, 32

*Ex parte Mattox*,
683 S.W.2d 93 (Tex. App.—Austin 1984, pet. ref'd) ...................................24, 25

*Ex Parte McCullough*,
966 S.W.2d 529 (Tex. Crim. App. 1998) ............................................................14

*Ex parte Meza*,
185 S.W.2d 444 (Tex. Crim. App. 1945) ............................................................36

*Ex parte Pitt*,
206 S.W.2d 596 (Tex. Crim. App. 1947) ............................................................35

*Ex parte Rathmell*,
717 S.W.2d 33 (Tex. Crim. App. 1986) ..............................................................13

*Ex parte Robinson*,
641 S.W.2d 552 (Tex. Crim. App. 1982) ...............................................13, 14, 45

*Ex parte Smith*,
178 S.W.3d 797 (Tex. Crim. App. 2005) .......................................12, 13, 14, 20

*Ex Parte Watkins*,
73 S.W.3d 264 (Tex. Crim App. 2002) ..............................................................14

*Ex parte Weise*,
55 S.W.3d 617 (Tex. 2001)....................................................................*passim*

*Fulmore v. Lane*,
140 S.W. 405 (Tex. 1911).................................................................................34

*Goldwater v. Carter*,
444 U.S. 996 (1979).........................................................................................34

*Gravel v. United States*,
408 U.S. 606 (1972).....................................................................................38, 39

*Helstoski v. Meanor*,
442 U.S. 500 (1979).....................................................................................21, 44

*Henderson v. State*,
   962 S.W.2d 544 (Tex. Crim. App. 1997) ............................................................. 11

*Hernandez v. City of Lafayette*,
   643 F.2d 1188 (5th Cir. 1981) ............................................................................ 40

*Homan v. Branstad*,
   812 N.W.2d 623 (Iowa 2012) ............................................................................ 34

*In re Masonite Corp.*,
   997 S.W.2d 194 (Tex. 1999) .............................................................................. 23

*In re Perry*,
   60 S.W.3d 857 (Tex. 2001) ............................................. 22, 39, 40, 42, 43

*Irons v. R.I. Ethics Comm'n*,
   973 A.2d 1124 (R.I. 2009) ................................................................................. 42

*Jessen Assocs., Inc. v. Bullock*,
   531 S.W.2d 593 (Tex. 1976) ....................................................................... 34, 40

*Karenev v. State*,
   281 S.W.3d 428 (Tex. Crim. App. 2009) (Cochran, J., concurring,
   joined by Price, Womack, and Johnson, JJ.) ...................................................... 20

*Kilbourn v. Thompson*,
   103 U.S. 168 (1880) ..................................................................................... 38, 39

*Langever v. Miller*,
   76 S.W.2d 1025 (Tex. 1934) .............................................................................. 31

*Luther v. Borden*,
   48 U.S. 1 (1849) ................................................................................................. 34

*Meshell v. State*,
   739 S.W.2d 246 (Tex. Crim. App. 1987) ........................................................... 32

*Mistretta v. United States*,
   488 U.S. 361 (1989) ........................................................................................... 13

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ........................................................................................... 22

*Mutscher v. State,*
514 S.W.2d 905 (Tex. Crim. App. 1974) ...........................................................40

*Nixon v. United States,*
506 U.S. 224 (1993) ..........................................................................................34

*Pickle v. McCall,*
24 S.W. 265 (Tex. 1893)....................................................................................34

*Saldano v. State,*
70 S.W.3d 873 (Tex. Crim. App. 2002) .............................................................25

*Shade v. U.S. Congress,*
942 F. Supp. 2d 43 (D.D.C. 2013) .....................................................................40

*Smith v. Flack,*
728 S.W.2d 784 (Tex. Crim. App. 1989) ...........................................................22

*Spokane Grain & Fuel Co. v. Lyttaker,*
109 P. 316 (Wash. 1910) ...................................................................................34

*State Emps. Bargaining Agent Coal. v. Rowland,*
494 F.3d 71 (2d Cir. 2007) ................................................................................42

*State ex rel. Cason v. Bond,*
495 S.W.2d 385 (Mo. 1973) ..............................................................................34

*State ex rel. Dickson v. Saiz,*
308 P.2d 205 (N.M. 1957) .................................................................................34

*State ex rel. Lykos v. Fine,*
330 S.W.3d 904 (Tex. Crim App. 2011) ...............................................12, 19, 28

*State ex rel. Wis. Senate v. Thompson,*
424 N.W.2d 385 (Wis. 1988)..............................................................................34

*State v. Dankworth,*
672 P.2d 148 (Alaska Ct. App. 1983)................................................................42

*State v. Holton,*
997 A.2d 828 (Md. Ct. Spec. App. 2010), *aff'd*, 24 A.3d 678 (Md.
2011) .............................................................................................................41, 42

*State v. Moff,*
 154 S.W.3d 599 (Tex. Crim. App. 2004) ........................................................10

*State v. Neufeld,*
 926 P.2d 1325 (Kan. 1996) ............................................................................42

*State v. Rhine,*
 297 S.W.3d 301 (Tex. Crim. App. 2009) (Keller, P.J., concurring) .................31

*Tenney v. Brandhove,*
 341 U.S. 367 (1951) ............................................................................38, 40, 43

*Torres Rivera v. Calderon Serra,*
 412 F.3d 205 (1st Cir. 2005) ..........................................................................42

*United States v. Beery,*
 678 F.2d 856 (10th Cir. 1982) .......................................................................44

*United States v. Brewster,*
 408 U.S. 501 (1972) .............................................................................40, 41, 44

*United States v. Dowdy,*
 479 F.2d 213 (4th Cir. 1973) ..........................................................................42

*United States v. Helstoski,*
 442 U.S. 477 (1979) ...................................................................................39, 41

*United States v. Hollywood Motor Car Co.,*
 458 U.S. 263 (1982) .......................................................................................45

*United States v. Johnson,*
 383 U.S. 169 (1966) .......................................................................39, 41, 42, 44

*United States v. Kolter,*
 71 F.3d 425 (D.C. Cir. 1995) ..........................................................................44

*United States v. Lanier,*
 520 U.S. 259 (1997) .......................................................................................46

*United States v. Myers,*
 635 F.2d 932 (2d Cir. 1980) .....................................................................21, 22

*United States v. Renzi*,
   686 F. Supp. 2d 956 (D. Ariz. 2010) ................................................44

*United States v. Rose*,
   28 F.3d 181 (D.C. Cir. 1994) ............................................................21

*United States v. Rostenkowski*,
   59 F.3d 1291 (D.C. Cir. 1995) ..........................................................44

*United States v. Swindall*,
   971 F.2d 1531 (11th Cir. 1992) ...................................................43, 44

*United States v. Zielezinski*,
   740 F.2d 727 (9th Cir. 1984) ............................................................44

*Women's Emergency Network v. Bush*,
   323 F.3d 937 (11th Cir. 2003) ..........................................................43

**STATUTES**

Tex. Penal Code § 39.02(a)(2) .....................................................45, 46

**OTHER AUTHORITIES**

1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF
   TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS (George D.
   Braden ed. 1977).................................................................................33

G. DIX AND R. DAWSON, 43A TEX. PRAC. SERIES: CRIMINAL PRACTICE
   AND PROCEDURE § 42.254 (Supp. 2005)...........................................19

Senate Research Center, Budget 101: A Guide to the Budget Process
   in Texas (Jan. 2013).........................................................................26

Tex. Const. art. II, § 1 ...............................................................................17

Tex. Const. art. III, § 21 ............................................................................18

Tex. Const. art. III, § 49a .........................................................................25

Tex. Const. art. IV, § 9..............................................................................39

Tex. Const. art. IV, § 14.......................................................................36, 40

Tex. Const. art. XV, §§ 1-5................................................................36

TEX. PRAC. SERIES: CRIMINAL PRACTICE AND PROCEDURE § 42.254
   (Supp. 2005)........................................................................19

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW Appellant, James Richard "Rick" Perry (Governor Perry), and pursuant to the Court's Order of October 7, 2015, presents his brief on the merits addressing his grounds for review, and would respectfully show this Honorable Court the following:

**<u>Statement of the Case</u>**

In August 2014, a two-count indictment was returned against Governor Perry, alleging that he violated Sections 36.03(a)(1), 1.07(a)(9)(F) (Count II, coercion of public servant), and 39.02(a)(2) (Count I, abuse of official capacity) of the Texas Penal Code by threatening to exercise, and then actually exercising, the authority vested in the Governor by the Texas Constitution to veto appropriations. CR4-5. Ten days later, Governor Perry filed an application for pretrial writ of habeas corpus contesting the legality of his restraint and seeking to bar his prosecution on both counts, primarily on constitutional grounds. CR11. After the district court denied relief, CR464-84, he appealed to the Third Court of Appeals. In a published opinion, that court held that none of Governor Perry's nine constitutional challenges to Count I or seven of his eleven constitutional challenges to Count II were cognizable because they were not "facial," but merely "as applied." Slip Op. at 10-32. The court then granted relief on Count II because the statute was facially unconstitutional under the First Amendment. *Id.* at 32-97. The

1

court found it unnecessary to address Governor Perry's cognizable, facial vagueness challenges to the statute. *Id. at* 97.

Governor Perry filed his petition for discretionary review on August 18, 2015, presenting four grounds to challenge the decision that Count I was not cognizable by habeas corpus review. Two weeks later, the State Prosecuting Attorney, but not the Attorney Pro Tem that presented and sought the indictment, filed her petition for discretionary review attacking the court of appeals' decision that Count II was unconstitutionally overbroad.[1] On October 7, 2015, this Court granted both petitions.[2]

---

[1] See State's Petition for Discretionary Review at 2, citing *Ex parte Perry*, Slip Op. at 97. However, the court of appeals actually held that the statutory scheme "is facially invalid under the First Amendment and is thus unenforceable." *Id*.

[2] In light of the State's petition, Governor Perry moved for leave to file a supplemental petition adding grounds for review 5 through 8, which complained of the court of appeals' decision that seven of Governor Perry's constitutional claims as to Count II were non-cognizable. This Court granted leave to file this previously-submitted supplemental petition on September 10, 2015, but did not grant review on those grounds. Telephone call from Abel Acosta, Clerk of the Court of Criminal Appeals, to David Botsford, counsel for Governor Perry on October 14, 2015. David Botsford notified Lisa McMinn, State Prosecuting Attorney, of this telephone call immediately thereafter.

## Grounds for Review

1.    Whether the Third Court of Appeals erred by holding that all nine of Governor Perry's constitutional challenges to Count I were "as applied" challenges to the abuse of official capacity statute and therefore not cognizable in a pretrial application for writ of habeas corpus?[3]

2.    Whether the Third Court of Appeals erred by holding that Governor Perry's challenges to Count I based upon Article II, Section I of the Texas Constitution—separation of powers—were "as applied" challenges to the abuse of official capacity statute and therefore not cognizable in a pretrial application for writ of habeas corpus?[4]

3.    Whether the Third Court of Appeals erred by holding that Governor Perry's challenges to Count I based upon Article III, Section 21 of the Texas Constitution—Speech and Debate Clause and common law legislative immunity—were "as applied" challenges to the abuse of official capacity statute and therefore not cognizable in a pretrial application for writ of habeas corpus?[5]

4.    Whether, even if all of Governor Perry's constitutional challenges to Count I were in fact "as applied" challenges, the Third Court of Appeals erred in failing to recognize that the same rationale that requires "exceptions" for other "as applied" challenges—specifically prosecutions that would constitute double jeopardy or would be barred by limitations—should apply, with even greater force, to a prosecution based solely on a defendant's exercise of conduct protected by the Speech and Debate Clause and the Separation of Powers provisions of the Texas Constitution and the common law doctrine of legislative immunity?[6]

---

[3]    *See* CR14-16, 41-42, 48-49, 409, 417-19 and 464-73.

[4]    *See* CR14-16, 41-42, 48-49, 409, 417-19 and 464-73.

[5]    *See* CR14-16, 41-42, 48-49, 409, 417-19 and 464-73.

[6]    *See* CR14-16, 41-42, 48-49, 409, 417-19 and 464-73.

## Statement of the Facts

On August 15, 2014, a Travis County grand jury returned a two-count indictment against then-Governor James Richard "Rick" Perry. The indictment alleged that Governor Perry broke the law by threatening to veto an appropriation item and subsequently issuing a veto. CR4-5. Count I, which alleges an Abuse of Official Capacity under Section 39.02(a) of the Texas Penal Code, states:

> On or about June 14, 2013, in the County of Travis, Texas, James Richard "Rick" Perry, with intent to harm another, to wit, Rosemary Lehmberg and the Public Integrity Unit of the Travis County District Attorney's Office, intentionally or knowingly misused government property by dealing with such property contrary to an agreement under which defendant held such property or contrary to the oath of office he took as a public servant, such government property being monies having a value of in excess of $200,000 which were approved and authorized by the Legislature of the State of Texas to fund the continued operation of the Public Integrity Unit of the Travis County District Attorney's Office, and which had come into defendant's custody or possession by virtue of the defendant's office as a public servant, namely, Governor of the State of Texas.

CR4-5. The gist of this charge is that Governor Perry "misused" government property by vetoing funding for the Travis County Public Integrity Unit ("PIU"). CR4-5. If the words of the indictment left any doubt that the charge might somehow encompass some other conduct, the State quashed that doubt by conceding that the gravamen of Count I is the veto. In its "Bill of Particulars and Amendment of Indictment," filed in response to a suggestion from the trial judge, the State explained: "Defendant Perry *misused his gubernatorial power to veto* a

4

legislatively-approved appropriation of funds for the Public Integrity Section of the Travis County District Attorney Office."(emphasis added).[7] That document further explained that Governor Perry allegedly "misused government property that was subject to his custody and possession in that he used *the lawful power of gubernatorial veto* for an unlawful purpose, to wit: eliminating funding for the Public Integrity Unit after Ms. Lehmberg refused to resign from her elected position as Travis County District Attorney." CR5 (emphasis added).[8]

The indictment appears to allege that Count I is a first degree felony offense, based on the rationale that the revenues that would subsequently enter the State Treasury but (as a result of the veto) not be expended would exceed $200,000. But the veto power is an intangible right of the Governor without discernable monetary value, and certainly not the value of the amount of whatever appropriation was vetoed. Thus, even if Governor Perry had committed a criminal offense by exercising his constitutional responsibility to exercise the veto when he thought appropriate, such offense would properly be classified a Class C misdemeanor under Section 39.02(c)(1).[9]

On August 19, 2014, Governor Perry was processed by the Travis County

---

[7]     March 2, 2015, Supplemental Clerk's Record at 4.

[8]     A second count, which alleged that Governor Perry committed Coercion of a Public Servant under Sections 36.03(a)(1) and 1.07(a)(9)(F) of the Texas Penal Code, was dismissed by the court of appeals based on the facial unconstitutionality of the statute. The Court has granted the State's petition for discretionary review challenging that judgment.

5

Sheriff and released on bond pending trial. CR8-10.

On August 25, 2014, Governor Perry filed an Application for Pretrial Writ of Habeas Corpus (the "Application"). He challenged the legality of his restraint and specifically sought "to bar the prosecution" on both counts. CR14. The Application presented nine constitutional claims as to Count I. CR17-18,[10] and sought dismissal and a bar to any further prosecution as a remedy. CR49.

The district court gave the State almost three months to respond, and the State filed its response on November 7, 2014. CR274. Governor Perry filed a reply to the State's response on November 17, 2014. CR391.

Fourteen nationally-known constitutional scholars filed an *amicus curiae* brief in support of Governor Perry's Application. CR367-90. The *amici* supported Governor Perry's prayer for dismissal of Count I on two grounds: (1) that the constitutional doctrine of Separation of Powers precluded the Legislature from criminalizing the exercise of a constitutionally authorized gubernatorial veto; and (2) that Governor Perry cannot be prosecuted for his veto because he is entitled to absolute legislative immunity for any exercise of his veto power. CR375-84.[11]

On January 27, 2015, the district court denied the Application without a

---

[9] *See* March 2, 2015 Supplemental Clerk's Record at 38.

[10] These nine constitutional claims are set forth in the court of appeals opinion at 6-7 and reproduced at **TAB 1**.

[11] The *amici* also supported Governor Perry's prayer for dismissal of Count II on the ground that it criminalizes speech protected by the First Amendment. CR384-89.

6

hearing. CR464-84. The court ruled that none of Governor Perry's constitutional challenges to Count I were cognizable in a pretrial habeas proceeding because they raised merely as-applied, not facial, constitutional arguments. CR468-73. While the court acknowledged that Perry's arguments were "compelling" and "may be relevant at a later time," it declined to reach their merits, stating that "the court's hands are tied" under its reading of this Court's precedents regarding cognizability. CR472-73.

Governor Perry timely appealed to the Third Court of Appeals. The constitutional scholars (with some additions) who had filed an amicus curiae brief in the district court renewed their support of Governor Perry's prayer for dismissal of Count II. Amici urged the same two grounds as it had in the district court.

On July 24, 2015, the court issued an opinion and judgment.

## Summary of the Argument

The court of appeals quoted, with seeming approval, the district court's observations that Governor Perry's claims are "compelling," "unique," "important," and "certainly deserv[ing] of careful consideration in an appropriate forum." Slip Op. at 8 (quoting CR472-73). But like the district court, the court of appeals believed that this Court's "binding precedents" prevented consideration of these claims in a pretrial habeas corpus proceeding. *Id.* at 2, 25-32, 97. Both courts concluded that the label "as applied," regardless of the context in which it is

7

used, requires the denial of any pretrial habeas relief (unless the claim falls into one of two discrete exceptions to the "facial/as-applied" dichotomy). *See Id.* at 25-32, CR471-73. This approach was wrong at every turn.

To begin with, all of Governor Perry's constitutional claims are cognizable under the principles and policies previously pronounced and currently employed by this Court. Far from the "label and go home" approach of the courts below, this Court evaluates cognizability based on substance, not mere form. It makes a multi-faceted inquiry about whether considering the grant of extraordinary relief before trial would ultimately advance the sound administration of justice. When such an inquiry is conducted on the face of this record Governor Perry's are clearly cognizable.

One important consideration for this Court has been whether a pretrial review is essential to prevent the irremediable loss of constitutional rights. Like other claims that must be considered before trial—such as double-jeopardy or limitations—Governor Perry cannot adequately assert his constitutional rights here by merely interposing them as defenses at trial. Like those claims, many of the constitutional principles Governor Perry invokes here, such as the Separation of Powers, the Speech and Debate Clause, and legislative immunity, assert "that the trial court lacked the power to proceed" on the charges in the first instance. And like double-jeopardy and limitations, these asserted rights cannot be protected

8

unless they are addressed and resolved before trial.

A second consideration for this Court is judicial economy. In fact-bound cases, the outcome-determinative questions must await trial for resolution. But here the opposite is true. Judicial economy is served by considering Governor Perry's challenges now, because his legal arguments will wholly pretermit the need for a trial on Count I if any of his grounds persuade the Court.

Third, and related to judicial economy, this Court has considered whether the applicant would be entitled to immediate release from further proceedings if he prevails to be an important justification for pretrial review. Governor Perry certainly meets this test; if he prevails on any arguments regarding Count I, and the lower court's dismissal of Count II is not disturbed, then the prosecution against him must be dismissed.

Finally, even assuming arguendo that Governor Perry's claims were not of the type that this Court has already recognized as cognizable, the Court should clarify the law to permit immediate resolution of the merits of his challenges. Governor Perry's constitutional claims pose fundamental questions about any governor's authority to exercise one of that office's core constitutional responsibilities—the review of legislative acts, including the possibility of veto. The basic comity that one branch of government owes to its coordinate branches compels a prompt and conclusive answer to these questions.

9

When the merits of Governor Perry's challenges are addressed, the outcome is clear—the Constitution prohibits this prosecution against Governor Perry. Accordingly, this Court should grant the writ of habeas corpus and dismiss this unfortunate and misguided prosecution.

## Argument

I. **Governor Perry's Claims Are Properly Cognizable**

The court of appeals misapprehended the nature of Governor Perry's as-applied challenges. Because these challenges can be decided from the face of the indictment, unlike typical as-applied challenges which require development of a factual record at trial, Governor Perry's as-applied challenges are cognizable in pretrial habeas. All the factors underlying Texas habeas jurisprudence support cognizability here. Indeed, the most wasteful and prejudicial course would be to proceed to trial with the legally appropriate means of pretrial resolution so close at hand.

### A. The Standard of Review is De Novo.

Every aspect of this case is subject to de novo review by this Court.

First, whether an issue should be addressed by habeas review, rather than by an appeal after trial, is a purely legal determination that appellate courts review de novo. *See Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005); *see also State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (standard of review is

10

de novo for legal determinations that do not turn on evaluation of witness's credibility or demeanor or on disputed facts).

Second, on the merits, Governor Perry's claims are also subject to de novo review, because the constitutionality of a statute is also a pure question of law. *See Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

Finally, any questions concerning the application of law to facts "when a court confronts important, clearly defined issues of first impression" are considered de novo. *Henderson v. State*, 962 S.W.2d 544, 551 (Tex. Crim. App. 1997).

For all these reasons, a trial on Count I could add no clarity to this record for purposes of constitutional review.

**B.      The court of appeals misunderstood this Court's approach to the cognizability of pretrial habeas claims.**

**1.      This Court's approach to cognizability is functional.**

This Court has recognized that "[p]retrial habeas should be reserved for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review." *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. 2001). The Court has identified three categories of cases in which the writ is available:

> First, the accused may challenge the State's power to restrain him at all. Second, the accused may challenge the manner of his pretrial restraint, i.e., the denial of bail or conditions attached to bail. Third, the accused may raise certain issues which, if meritorious, would bar prosecution or conviction.

*Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005) (footnotes omitted).

The Court's cases also impose prudential, but not constitutionally-mandated, limits on the issues that are cognizable in a pretrial habeas proceeding, none of which would be offended by entertaining Governor Perry's claims:

- Pretrial habeas is unavailable when there is an adequate remedy by appeal. It should be reserved for situations in which the protections of the applicant's substantive rights or the conservation of judicial resources would be better served.[12]

- Because an interlocutory appeal is an extraordinary remedy, appellate courts need to be careful to ensure that a pretrial writ is "not misused" to secure pretrial appellate review of matters that "should not be put before appellate courts at the pretrial stage"—a variation of ripeness.[13]

- Pretrial habeas is not appropriate when the question presented, even if resolved in the applicant's favor, would not result in immediate release from restraint.[14]

- Pretrial habeas should not be used when a complete factual record is required to address the claim, which includes most as-applied challenges to the constitutionality of the statute upon which the offense is based.[15]

While this Court has cited *Weise* for the broad proposition that pretrial habeas "may not be used to advance an 'as applied' challenge," *Ex Parte Ellis*, 309

---

[12]   *Ex parte Weise*, 55 S.W.3d 617, 619-20 (Tex. 2001).

[13]   *Ex Parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010) (quoting *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005); *see also Weise*, 55 S.W.3d at 619-21.

[14]   *Weise*, 55 S.W.3d at 619; *Doster*, 303 S.W.3d at 724.

[15]   *Ex Parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010); *see also State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim App. 2011) ("An 'as applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and the reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner.").

S.W.3d 71, 79 (Tex. Crim. App. 2010) (citing *Ex parte Weise*, 55 S.W.3d at 620-21), the principles underlying both decisions actually support consideration of Governor Perry's challenges, as discussed below. This Court's tests serve to ensure that courts *are* open to proper cases as well as to ensure that they are closed to improper cases. Unsurprisingly, therefore, Texas courts have considered pretrial habeas on the merits in what were technically "as applied" challenges far afield from double jeopardy[16] or limitations,[17] including:

- A claim that the statute violates separation of powers because, if granted, that separate and independent constitutional provision eliminates the power of the courts to proceed.[18]

- A claim of collateral estoppel because, if granted, the re-litigation of the issue would be barred, although it may not bar another trial

---

[16] *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex. Crim. App. 1982); *Ex parte Rathmell*, 717 S.W.2d 33, 34 (Tex. Crim. App. 1986) (noting that the Supreme Court had made it clear that an interlocutory appeal of a double jeopardy claim "is not only a proper but a preferred remedy," because the right against twice being placed in jeopardy would be "significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence").

[17] A claim that the face of the indictment demonstrates that any prosecution is barred by the statute of limitations, unless this is a "reparable" pleading defect, is cognizable in pretrial habeas. *Weise*, 55 S.W.3d at 620; *see also Smith*, 178 S.W.3d at 804.

[18] In *Ex parte Elliott*, 973 S.W.2d 737, 738-43 (Tex. App—Austin 1998, pet. ref'd), this same court of appeals addressed the merits of a pretrial habeas challenge based on a violation of the nondelegation doctrine embodied within Texas' separation of powers provisions. *Elliott* cited this Court's opinions in *Ex parte Humphrey*, 244 S.W. 822 (Tex. Crim. App. 1922) and *Ex parte Leslie*, 223 S.W.2d 227 (Tex. Crim. App. 1920), both of which also involved pretrial habeas challenges to statutes on the basis of a violation of the nondelegation doctrine. *Cf. Ex parte Gill*, 413 S.W.3d 425, 431-32 (Tex. Crim. App. 2013) (considering but overruling the State's separation of powers challenge to Article 17.151 of the Texas Code of Criminal Procedure on discretionary review by a pretrial habeas applicant). The prohibition on unwarranted delegation of lawmaking power is "rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989).

altogether.[19]

- A claim of illegal restraint by an order deferring adjudication of guilt.[20]

- A claim that a statute cannot be constitutionally applied to the facts alleged on the face of the indictment.[21]

From these holdings, one can glean at least three key considerations underlying the Court's jurisprudence regarding cognizability in pretrial habeas. The first is whether there is an adequate remedy by appeal, which includes analysis of whether the right at stake would be undermined unless the issues were cognizable in pretrial habeas. *See Weise*, 55 S.W.3d at 619-20; *Ex parte Robinson*, 641 S.W.2d 552, 554-55 (Tex. Crim. App. 1982). The second consideration is judicial economy. *See Smith*, 178 S.W.3d at 802 ("There is no point in wasting scarce judicial and societal resources or putting the defendant to great expense, inconvenience, and anxiety if the ultimate result is never in question.").[22] The third is whether resolution of the question presented, if resolved in favor of the applicant, would result in the immediate release of the applicant. *See Ex Parte Watkins*, 73 S.W.3d 264, 275 (Tex. Crim App. 2002). As discussed below, *see infra* Part I(C), all nine of Governor Perry's constitutional challenges to Count I

---

[19]     *Ex Parte Watkins*, 73 S.W.3d 264, 273 (Tex. Crim App. 2002).

[20]     *Ex Parte McCullough*, 966 S.W.2d 529, 531 (Tex. Crim. App. 1998).

[21]     *Ex parte Boetscher*, 812 S.W.2d 600, 601-04 (Tex. Crim. App. 1991).

[22]     *But see Doster*, 303 S.W.3d at 725 (noting that the Court has "never actually resolved whether [judicial economy], absent a jurisdictional or constitutional defect, would be sufficient to make a claim cognizable on pretrial habeas").

14

satisfy these principles underlying this Court's pretrial habeas jurisprudence.

### 2. The court of appeals adopted an erroneous "label-driven" approach to deciding cognizability.

In denying the cognizability of Governor Perry's nine constitutional claims as to Count I, the court of appeals gave controlling weight not to the guiding principles discussed above, but to shorthand labels that *sometimes*, but not invariably, reflect the results when those standards are properly applied. Thus, the court below wrongly considered itself "duty-bound" to deny relief because, under the law as articulated by this Court, "such potential harms incurred" by defendants like Governor Perry "are simply deemed insufficient in themselves to provide a basis for relief through pretrial habeas corpus." Slip Op. at 5, 32.

Governor Perry always recognized that true "as applied" challenges—those that are particular to the facts that may not even have been determined yet, rather than those that are purely legal—should not be resolved via pretrial habeas proceedings. But the court of appeals decided that further judicial inquiry was foreclosed based on this self-labeling alone. *Id.* at 11. Hence, the court's only references to the Speech and Debate Clause or the Separation of Powers requirement of the Texas Constitution—other than acknowledging the district court's characterization of those claims as "compelling"[23]—came in its description

---

[23]     Slip Op. at 8, citing CR472-73.

15

of Perry's arguments, not in its analysis of whether those claims were cognizable.[24] Despite the length of its opinion and the care it obviously devoted to this case, the court apparently failed to consider, and certainly failed to explain, why these claims were not the paradigmatic examples of claims that required pretrial resolution.

Commendably, however, the court of appeals indicated that, but for its perception of absolute bar that it understood this Court to have imposed, it would have regarded the claims as cognizable. It did so by exploring at length various functional and common-sense tests and standards that this Court has used to demarcate what is cognizable in habeas from what is not. Specifically, the court noted that this Court will grant habeas relief when double jeopardy has attached to a subsequent prosecution (*id.* at 21, 30), or when a prosecution would be barred by limitations. (*Id.* at 21, 23). This analysis was correct; what was erroneous was the court's view that it was powerless or incompetent to examine the rationale behind these outcomes to decide whether the same result was required here.

But had the court below explored not merely the existence of this Court's functional tests, but the reasons behind them, it could not have denied that mere labels have never been and cannot be dispositive. Even though Governor Perry has consistently conceded that his challenges would not invalidate Section 39.02(a)(2)

---

[24]     *See* Slip Op. at 20, 21, 22.

16

for all purposes against all possible defendants, he has delivered many pages of arguments and authorities to both the trial court and the court of appeals explaining in detail why his constitutional arguments should be cognizable now. The State's violation of Separation of Powers,[25] the Speech and Debate Clause,[26] and the doctrine of legislative immunity flowing therefrom all assert "that the trial court lacked the power to proceed" at all, the same as a normal facial challenge to the constitutionality of a statute. Rather than analyze whether the challenges here were of the type that have been and should be resolved before trial, however, the court of appeals contented itself with pointing out that Governor Perry himself had labeled "virtually all" of his claims as "as applied." *Id.* at 1, 6-10.

In short, the court of appeals seemed to believe that, absent binding precedent from this Court involving the *precise circumstances* presented here—a prosecution of a Texas governor for threatening to exercise, and then exercising, a veto, it could take no action regardless of how much this Court's jurisprudence justified the cognizability of Governor Perry's claims. The inevitable consequence, of course, is that the State gets a free shot to try any governor for any veto until this Court chooses to use that case to expand its list. That cannot be the law, and the Court should make clear that the court of appeals erred in imputing that intention to this Court. Governor Perry now turns to a more comprehensive

---

[25] Tex. Const. art. II, § 1.

17

analysis of how this Court's precedents comfortably coexist with the cognizability of his claims

**C.    Under an appropriate analysis, all of Governor Perry's claims are cognizable.**

The court of appeals employed a mistaken methodology to assess cognizability, and it consequently reached an erroneous conclusion. Proper application of this Court's precedents makes clear why Governor Perry's claims must be considered before trial.

**1.    All of Governor Perry's challenges are the functional equivalent of a facial attack on Section 39.02(a)(2).**

Despite this Court's shorthand observation that pretrial habeas "may not be used to advance an 'as applied' challenge," *Ex Parte Ellis*, 309 S.W.3d at 79, neither the facts of that case nor the *Weise* case on which it relied support a conclusion that this statement is a hard and fast rule that supplants the Court's flexible inquiry. *Ellis* involved a vagueness challenge to the definition of "funds" contained in the money laundering statute. Although the applicants had labeled the claim as a "facial" challenge and the court of appeals had determined it to be cognizable, this Court held that it was a really an "as applied" challenge that was not cognizable. The Court reached this conclusion because: (1) a facial vagueness challenge, in the absence of First Amendment implications, "can succeed only if it

---

26      Tex. Const. art. III, § 21.

18

is shown that the law is unconstitutionally vague in all of its applications," 309 S.W.3d at 80, and (2) applicants had not argued that the statute implicated the First Amendment or was vague in all of its applications. *Id*. Here, of course, the first Amendment is implicated.

*Weise* involved a challenge to the illegal dumping statute. The applicant claimed that the absence of a culpable mental state in the statutory scheme rendered the statute unconstitutional as applied to him. According to the Court, Weise was not attacking the power of the trial court to proceed, but was simply raising an attack on the charging instrument that could have been raised by motion to quash. 55 S.W.3d 617 at 620-21 (Tex. Crim. App. 2001). In the course of its analysis, the Court discussed the "variety of factors" and "protections" such as limitations, double jeopardy and bail, that "would be effectively undermined if these issues were not cognizable" at the habeas stage. *Id*. at 619-20.

This Court's jurisprudence as a whole make clear that the "facial/as-applied" dichotomy applies (and makes sense) only when the challenge "requires a recourse to evidence," which must await trial. *State ex rel. Lykos v. Fine,* 330 S.W.3d 904, 910 & n.22 (Tex. Crim App. 2011) (quoting G. DIX AND R. DAWSON, 43A TEX. PRAC. SERIES: CRIMINAL PRACTICE AND PROCEDURE § 42.254 (Supp. 2005)). When, on the other hand, as-applied challenges can be decided solely by reference to the indictment and the statute, as here, they are really legal challenges to the

19

statute itself. They rely only on the indictment and the statutes, not the underlying facts or circumstances to be proven at a hearing or trial. As and matter of law and logic, they stand on the same footing, insofar as the cognizability principles described above are concerned, as a facial challenge. *See Smith*, 178 S.W.3d at 802 ("There is no point in wasting scarce judicial and societal resources or putting the defendant to great expense, inconvenience, and anxiety if the ultimate result is never in question."). They are, in short, functionally equivalent. *See Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (Cochran, J., concurring, joined by Price, Womack, and Johnson, JJ.) ("A facial challenge is based solely upon the face of the penal statute and the charging instrument, while an applied challenge depends upon the evidence adduced at a trial or hearing." (emphasis added)); *see also* CR417-18. And, because they involve the right not to be tried at all, they are the type of claim which judicial efficiency and fairness require to be considered and resolved at the outset of the prosecution.

2. **The key reasons to permit pretrial habeas review are all present here.**

   a. **Governor Perry's challenges can be resolved on the face of the indictment.**

First, Governor Perry's challenges can be decided based solely on the face of the indictment and statutes under which he is charged—practically the definition of a "facial" challenge. He contends that those facts sufficiently demonstrate that the

20

statute, as applied to those facts, is unconstitutional and void as to his prosecution. This is the essence of this Court's opinion in *Ex parte Boetscher*, 812 S.W.2d 600 (Tex. Crim. App. 1991): the indictment alleged facts (i.e., that Boetscher "was then residing in another state, to wit: Michigan" *id.* at 602) that formed the basis of his equal protection argument, rendering the statute void as to the State's attempted prosecution. *See also infra* Part I(C)(2)(discussing *Boetscher* in greater detail).

> **b.** **Governor Perry's challenges to the State's right to try him at all can only be vindicated in pretrial proceedings.**

Second, because Governor Perry's constitutional challenges involve a right not to be tried, they by definition cannot be adequately resolved by direct appeal after trial. CR42, 417-18. When prosecution of a public official violates the doctrine of separation of powers, "the policies underlying that doctrine" require that the affected official "be shielded from standing trial." *United States v. Rose*, 28 F.3d 181, 186 (D.C. Cir. 1994) (quoting *United States v. Myers*, 635 F.2d 932, 935 (2d Cir. 1980)). Similarly, the Speech or Debate Clause was designed to protect officials acting in a legislative capacity "not only from the consequences of litigation's results but also from the burden of defending themselves." *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) (quotation marks omitted) (quoting *Dombrowksi v. Eastland*, 387 U.S. 82, 85 (1967)); *see also Rose*, 28 F.3d at 185.

Governor Perry's legislative-immunity defense likewise involves a right not

to be tried. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (absolute immunity is "an entitlement not to stand trial"); *In re Perry*, 60 S.W.3d 857, 859-60 (Tex. 2001) (legislative immunity "shields legislative actors not only from liability, but also from being required to testify about their legislative activities" and "from the burden of defending themselves" (quoting *Dombrowski*, 387 U.S. at 85)). The mere pendency of criminal proceedings—and not just their eventual outcome—is what imperils these constitutional principles, which are designed to safeguard performance of core governmental functions. *See Myers*, 635 F.2d at 936 (describing the heightened dangers associated with trials of elected officials, including impairment of representation, irreparable political damage, and intimidation by political rivals); *see also* CR42.

c. **Important policy considerations compel a pretrial resolution of Governor Perry's constitutional challenges to the indictment.**

A post-trial appeal is an especially inadequate remedy here because the indictment against Governor Perry interferes with the powers of the highest official in state government. The current governor and his successors must be able to discharge their official responsibilities, including use of the veto power, free from any uncertainty about what conduct connected thereto may be criminal and what is lawful. *See Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Crim. App. 1989) ("In some cases, a remedy at law may technically exist; however, it may be

nevertheless so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate."); *cf. In re Masonite Corp.*, 997 S.W.2d 194, 198 (Tex. 1999) (adequacy of an appellate remedy depends in part on the public's interest in efficient resolution of a dispute and does not "focu[s] exclusively on whether the parties alone have an adequate appellate remedy"). If there is no way short of a jury trial to vindicate the constitutional responsibility to exercise the veto power when judged necessary by a governor, the veto power will obviously be chilled by the specter of any number of prosecutors ready to pounce (including, as here, prosecutors appointed in response to a criminal complaint requesting the indictment of Governor Perry from a group seeking to avenge a vetoed bill). The respect owed by each branch of the government to its coordinate branches demands a prompt and definitive answer to the questions raised by this prosecution.

### 3. Habeas review is cognizable under the state of the record as recognized by the court of appeals

The court of appeals expressed confusion that, in *Ex parte Boetscher*, 812 S.W.2d 600 (Tex. Crim. App. 1991), and perhaps elsewhere, this Court "employ[ed] 'as applied' phrasing" even as its "analysis resembled that in a conventional facial challenge." Slip Op. at 28. But there is nothing surprising about this at all. The Court was focused on the common-sense, functional outcome of applying meaningful principles to separate cognizable from non-cognizable claims; it did not

23

view the affixing of a label as the end of the inquiry. Only if the court of appeals' faulty premise were correct—that "'as applied' phrasing" necessarily leads to non-cognizability, regardless of context—would *Boetscher* be surprising.

In *Boetscher*, the defendant was charged with criminal nonsupport of his children, which a statute enhanced to a felony solely because he resided out of state. *Boetscher*, 812 S.W.2d at 601. He brought a pretrial habeas proceeding to challenge the enhancement provision of the statute on equal-protection grounds "as applied to the unusual circumstances of his case" (i.e., his out-of-state residence at the time of the offense). *Id*. at 603. The indictment specifically stated that "the defendant was then residing in another state, to-wit: Michigan," at the time of the offense. *Id*. at 602. This Court held that this as-applied-to-the-indictment challenge was cognizable in pretrial habeas, sustained the challenge, and ordered the indictment dismissed. *Id*. at 603-04. The Court expressly declined to consider whether the statute would be constitutional as applied in other scenarios. *Id*. at 604 n.8.[27]

---

[27]    *See also Ex parte Mattox*, 683 S.W.2d 93, 95-96 (Tex. App.—Austin 1984, pet. ref'd), where this same court of appeals affirmatively acknowledged its authority to consider and grant habeas relief upon *a challenge to the legal authority of the State to prosecute the accused*. *Id*. Mattox's third and fourth issues on appeal challenged the constitutionality of the commercial bribery statute as "vague on its face and as applied to the facts alleged in the indictments." *Id*. at 96. Both challenges were overruled, but only after the court addressed the arguments on the merits, stating the following regarding Mattox's "as applied" fourth issue:

> For one lawyer to offer another lawyer an economic benefit in consideration for the latter's breach of a fiduciary duty owed to a client is not a legitimate negotiating tactic; it is bribery. *It is just such conduct that has been alleged*

24

The court of appeals attempted to distinguish *Boetscher* from Governor Perry's case on the basis of that the former case "centered on the language of the statute itself," Slip Op. at 28-29, while Perry's challenges "are intertwined [not only] with disputes about what the underlying facts are" and "also with disputes about whether those facts would constitute violations of the statutes under which he is charged." *Id.* at 29. But the facts alleged in Count I are sufficient to demonstrate that Governor Perry's conduct was an exercise of his veto power under Article IV, Section 14 of the Texas Constitution which is protected conduct under the Speech or Debate Clause of Article III, Section 21 of the Texas Constitution. The prosecution of Governor Perry by the judiciary—the Attorney Pro Tem in the district court[28]—raises the purely legal question of whether the prosecution violates the separation of powers expressly embodied in Article II, Section 1 of the Texas Constitution. No other facts are necessary, although, for instance, judicial notice of the laws governing Texas' budget merely serve to reinforce the utter inapplicability of Count I to a gubernatorial veto.[29] Therefore,

---

*against Mattox in the indictments pending against him.*
*Id.* at 98 (emphasis added).

[28] The attorney pro tem and his assistant are part of the judicial branch, *Saldano v. State*, 70 S.W.3d 873, 876 (Tex. Crim. App. 2002),

[29] The Texas Constitution requires the Texas Comptroller to provide the Legislature a biennial revenue estimate ("BRE") at the beginning of each regular legislative session. *See* Tex. Const. art. III, § 49a. Because the Legislature is constitutionally prohibited from appropriating more revenue than will be collected, the BRE is used by the Legislature to ensure that appropriations will not exceed the anticipated revenue. Upon final passage of an appropriations bill, it is sent to the Texas Comptroller to certify whether the anticipated revenue will be

25

the court's conclusion that *Boetscher* is distinguishable from Governor Perry's separation of powers and Speech or Debate Clause related claims is untenable: no additional facts were necessary in *Boetscher* and none are necessary here.

Indeed, Governor Perry easily satisfies all the standards for extraordinary relief announced by this Court and actually discussed by the court of appeals:

**Rest of Page Intentionally Left Blank**

---

sufficient to cover the appropriations made by the Legislature. *See* Senate Research Center, Budget 101: A Guide to the Budget Process in Texas at 3, 10 (Jan. 2013), http://www.senate.state.tx.us/SRC/pdf/Budget_101-2011.pdf.

| Court of Criminal Appeals standards correctly quoted by court of appeals | Why Governor Perry satisfies each standard |
|---|---|
| Habeas is an "extraordinary remedy (Slip Op. at 9) | The court acknowledged this to be an extraordinary case (*Id.* at 31-32) |
| Habeas to be used "only in very limited circumstances" (*Id.* at 9) | Prosecuting a Governor for threatening to veto and vetoing a bill is unprecedented; remedying that abuse is a "very limited circumstance" |
| Habeas is "reserved for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be best served by interlocutory review" (*Id..* at 9) | Not merely a governor's own constitutional rights, but the preservation of each branch's separate and enumerated powers are threatened when an officeholder is indicted, with no allegation of bribery or corruption, for merely doing his job |
| Habeas is "not available to `test the sufficiency' of the charging instrument" (*Id.* at 12, 14), and thus not available to challenge an indictment's failure to include an element (like mens rea) (Slip Op. at 13), or a "hypothetical" complaint (like a pre-trial as applied challenge to a sentencing statute) (*Id.* at 15-16 & n.52), or where it would function like a "declaratory judgment" (*Id.* at 16) | Governor Perry does not challenge the sufficiency of this particular indictment in his writ, and certainly does not allege that it merely contains a technical defect; nor are his challenges hypothetical or speculative |
| Habeas is instead available "where the alleged defect would bring into question the trial court's power to proceed" (*Id.* at 12) | The gist of Governor Perry's claims are that the judicial branch cannot proceed against a Governor for threatening or exercising the veto itself |
| Examples of where habeas would lie include challenges based on limitations (*Id.* at 12), or on facial unconstitutionality (*Id.* at 13) | As described below, this proves too much—limitations and double jeopardy are not less "applied" to a particular defendant than the claims urged by Governor Perry against both counts |

*See also Id.* at 26-27 (summarizing some of these points). On every score, Perry's

claims align with those that this Court has *allowed*, not those it has rejected. The

court also failed to explain why, if "a 'facial' constitutional challenge seeks to establish that the statute is unconstitutional and unenforceable as to any person," *Id.* at 11 (quoting *State ex rel. Lykos*, 330 S.W.3d 908 (emphasis added), and if only such a facial challenge can be addressed by pretrial habeas, this Court has granted such relief when neither requisite is met. Why should not an already-tried defendant just patiently await the conclusion of his second trial to point out that claim was constitutionally barred all along? And why should not a defendant who was not timely prosecuted merely sit through his trial and attempt to mount a defense, secure in the knowledge that any conviction, while perhaps temporarily aggravating, will ultimately be reversed on appeal. After all, double jeopardy and limitations are the ultimate "as applied" challenges, claiming only that one particular defendant cannot be tried in this proceeding, even if the underlying statute is valid.

Of course, the court of appeals never questioned this Court's jurisprudence. Instead, the court contented itself with urging this Court to examine Governor Perry's claim and decide whether the "array of procedural mechanisms" should be expanded for one "faced with . . . loss of liberty." *Id.* at 4-5. But nothing in this Court's jurisprudence suggests that a lower court should confine its cognizability inquiry to whether or not a particular fact pattern has been addressed by the court of last resort, or that a lower court is powerless to apply this Court's principles to

rectify injustice.

The court of appeals inexplicably failed to examine whether double jeopardy and limitations are preordained as the lone "exceptions," *id.* at 13, or whether they are instead examples of the types of claims that courts properly resolve as a legal matter before the legal system subjects itself and the defendant (and here, the Texas form of government itself) to the rigors of trial. Nothing in this Court's cases requires the odd and narrow reading that isolates double jeopardy and limitations from all other claims, whether or not materially indistinguishable for the purposes of cognizability. Yet the court of appeals strained to read this Court's cases as narrowly as possible to make itself appear powerless to rectify injustice. The lower courts would not have, and this Court will not now, in any way undermine this Court's jurisprudence on cognizability by reaching Governor Perry's constitutional claims. Few criminal defendants will have resort to Speech and Debate or Separation of Powers defenses. Holding that Governor Perry's challenges are no less cognizable than constitutional double jeopardy or statutory limitations challenges would leave this Court's jurisprudence wholly intact.

**D.  If necessary, this Court should extend an exception to the cognizability doctrine.**

While Governor Perry steadfastly believes that his claims are cognizable under the principles discussed above, if the Court has any reservations, then it should create an extension of the current "exceptions," allowing pretrial habeas

review of constitutional claims that seek to bar a prosecution to the same extent that it allows review of claims under the Double Jeopardy Clause, collateral estoppel or the statute of limitations. While it may be rare for the constitutional impediments raised by Governor Perry to arise, and indeed they may never do so again, they are of paramount important to the political and criminal justice system in Texas. The issues raised here ae important not just to Governor Perry as an accused felon, but to the entire State; the reasons proffered to justify pre-trial review of other technically "as-applied" challenges apply with far greater force to this case. Thus, if the circumstances attending this prosecution must be categorized (or classified) by this Court before habeas relief can be considered, Governor Perry urges the Court to do so in this proceeding.

## II. The State's prosecution of Governor Perry is unconstitutional

Because the court of appeals believed that Governor Perry's challenges to Count I were not cognizable, it did not reach the merits. But it recognized the district court's observations that Governor Perry's claims are "compelling," "unique," "important," and "certainly deserv[ing] of careful consideration in an appropriate forum." *Id.* at 8. It also noted the need for this Court's review, stating that "[i]f the Texas criminal justice system should operate differently, that change must come from the Court of Criminal Appeals or the Legislature." *Id.* at 32. For the following reasons, the Court should not only accept the lower court's invitation

30

to entertain Governor Perry's challenges, but, having done so, it should find the prosecution against him to be void.

## A.    This prosecution violates the constitutional separation of powers

The court of appeals erred by refusing to dismiss Count I of the indictment as violating the Separation of Powers Clause of the Texas Constitution.[30]  Article II, Section 1 of the Texas Constitution mandates a clear separation of the functions of the coordinate branches of Texas government:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit:  Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Hence, unlike in the federal system, the requirement of separated powers is explicitly and emphatically set forth in our Constitution. *See State v. Rhine*, 297 S.W.3d 301, 314-315 (Tex. Crim. App. 2009) (Keller, P.J., concurring).  "So important is this division of governmental power that it was provided for in the first section of the first article of the Constitution of the Republic of Texas, and alone it constituted article 2 of each succeeding Constitution." *Langever v. Miller*, 76 S.W.2d 1025, 1035 (Tex. 1934). The provision "reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats

---

[30]    This section addresses claims 3 and 4 as to Count I (i.e., Ground for Review 1, 2, and 4).

31

to liberty is the accumulation of excessive power in a single branch of government." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990).

Texas courts have long been vigilant in preventing any attempt by one branch of government to encroach on the authority constitutionally secured to another branch. Thus, "any attempt by one department of government to interfere with the powers of another is null and void." *Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App. 1987) (quoting *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex. Crim. App. 1974)). The Separation of Powers Clause can be violated in two ways:

> (1) when one branch of government assumes or is delegated a power more properly attached to another branch, or

> (2) when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.

*Lo*, 424 S.W.3d at 28; *Ex parte Gill*, 413 S.W.3d at 431-32; *see also Armadillo*, 802 S.W.2d at 239. A statute that conflicts with any provision of the Texas Constitution is, of course, void. *See Cook v. State*, 902 S.W.2d 471, 479 (Tex. Crim. App. 1995). Indeed, "[w]hen the constitution speaks, it is supreme" and "[a]n enduring and lasting government requires that it so remain." *Ex parte Halsted*, 182 S.W.2d 479, 488 (Tex. Crim. App. 1944).

In this case, the actions of the judicial branch—represented here by the attorney pro tem, appointed by that district judge, and the panel of justices of the

court of appeals—unduly interfere with the constitutionally-assigned powers of the executive branch by scrutinizing a gubernatorial veto and the alleged threat preceding that veto. The power to veto, including the line-item veto of appropriations, is one of the core duties assigned to a Texas Governor by our Constitution. Article IV, Section 14 provides in part:

> If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect.

This language imposes no limits on the Governor's authority to exercise the veto in his or her unbounded discretion. As one authority noted: "The veto, particularly the item veto, is perhaps the most significant of the Texas governor's constitutional powers . . . . [B]ecause he has no significant budgetary powers . . . the item veto is the primary method by which he exercises some control over the amounts and purposes of state expenditures." 1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 339 (George D. Braden ed. 1977).[31]

In exercising the veto power, a Governor acts in a *legislative,* not an

---

[31] Indeed, virtually any exercise of the veto power could be criminalized—or at least harassed with prosecution—under the State's interpretation of the law. For example, every exercise of the veto, and particularly the line-item veto, will entail winners and losers. On the State's theory, such vetoes could nearly always be construed as a "misuse of government property" done with "intent to harm another" under Texas Penal Code Section 39.02.

executive, capacity, and thus is a member of a governing body.  *See Jessen*

*Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 598 (Tex. 1976) (governor's "veto power

is a legislative function and not an executive function"); *Fulmore v. Lane,* 140

S.W. 405, 411 (Tex. 1911); *Pickle v. McCall*, 24 S.W. 265, 268 (Tex. 1893).  This

is not an anomalous or outmoded view; the veto power is also characterized as a

legislative act in the federal system, *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998),

and in the jurisprudence of many other states.[32]

Because the power to veto is so central to the gubernatorial office, and

because nothing in the Texas Constitution or laws permits the judicial branch to

scrutinize a governor's political decision to veto an appropriation, this is the type

of "political question" that American courts have traditionally declined to review

as nonjusticiable.  *See generally Nixon v. United States*, 506 U.S. 224 (1993);

*Goldwater v. Carter*, 444 U.S. 996 (1979); *Coleman v. Miller*, 307 U.S. 433

(1939); *Luther v. Borden*, 48 U.S. 1 (1849).  The U.S. Supreme Court has generally

---

[32]    *See, e.g.*, *Homan v. Branstad*, 812 N.W.2d 623, 629 (Iowa 2012); *Barnes v. Secretary of Admin.*, 586 N.E.2d 958, 961 (Mass. 1992) ("it is for the Legislature . . . to determine finally which social objectives or programs are worthy of pursuit, the Governor may properly use his veto power to accomplish legislative-type goals") (citation omitted); *State ex rel. Cason v. Bond*, 495 S.W.2d 385, 392 (Mo. 1973) ("[W]hen the Governor takes part in appropriation procedures [by vetoing legislation], he is participating in the legislative process . . . ."); *State ex rel. Dickson v. Saiz*, 308 P.2d 205, 211 (N.M. 1957) ("when the Governor exercises his right of partial veto he is exercising a quasi-legislative function"); *Spokane Grain & Fuel Co. v. Lyttaker*, 109 P. 316, 320 (Wash. 1910) ("In approving and disapproving laws, in the exercise of his constitutional prerogative, the executive is a component part of the Legislature."); *State ex rel. Wis. Senate v. Thompson*, 424 N.W.2d 385, 391 (Wis. 1988) ("The partial veto power in this state was adopted . . . to make it easier for the governor to exercise what this court has recognized to be his 'quasi-legislative' role, and to be a pivotal part of the 'omnibus' budget bill process.").

recognized the doctrine in cases with

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).

State courts, including those of Texas, have had little need to articulate the concept as thoroughly as the U.S. Supreme Court, but they also have consistently declined to decide cases that raise political questions. This Court has held in the context of parole decisions that the Governor's exercise of his discretionary constitutional authority raises political, not judicial, questions. In *Ex parte Ferdin*, 183 S.W.2d 466 (Tex. Crim. App. 1944), this Court refused to entertain jurisdiction over "what is in effect an appeal from the act of the Governor in revoking the parole," because courts lack "power over the acts of the Governor so long as he is within the law and the matter involved is one of his judgment and discretion in the performance of his duty assigned to him by the Constitution . . . . Whether or not his acts are harsh, ill advised, and arbitrary, is not a matter for this court to decide . . . ." *Id.* at 467-68. *See also Ex parte Pitt*, 206 S.W.2d 596, 597 (Tex. Crim. App. 1947) ("The sole arbiter of the wisdom of the revocation [of the

35

Governor's conditional pardon] is the Governor."); *Ex parte Meza*, 185 S.W.2d 444, 445 (Tex. Crim. App. 1945) (same).

The Texas Constitution reposes the check on a Governor's veto power not in the judicial branch, but in the Legislature and the people. Should either deem veto decisions to be erroneous or improper, the Texas Constitution provides them with at least the possibility of a legislative or political countermeasure. The Legislature may, if it remains in session, override a gubernatorial veto. Tex. Const. art. IV, § 14. Legislators may refuse to cooperate with the Governor on subsequent initiatives, including appointments. If the Legislature concludes that the governor's actions are sufficiently reprehensible, the House may impeach and the Senate may try and, upon conviction, remove the governor from office. *Id.* art. XV, §§ 1-5. And voters may have an opportunity to defeat the re-election of a governor whose policy choices they oppose, or to replace a retiring governor with one of a different ilk. Moreover, they can elect legislators who will join in sufficient strength to re-enact vetoed legislation and override any further veto attempts. These alternatives have sufficient weight to cause most governors to exercise their veto power sparingly and deliberately. Allowing a criminal prosecution of a political decision where there is no allegation of bribery or demonstrable corruption undermines the basic structure of state government.[33]

---

[33] As discussed below in connection with the Speech or Debate Clause, the Legislature can

36

Thus, Section 39.02(a)(2) is void, at least to the extent that it permits the judicial branch in violation of Article II, Section 1, to interfere with the intended operation of Article IV, Section 14. Just as this Court and the court of appeals below have accepted a separation of powers claim as cognizable in pretrial habeas, *Ex parte Humphrey, supra*; *Ex parte Leslie, supra*; and *Ex parte Elliott*,[34] this Court should hold that claims 3 and 4 as to Count I of Governor Perry's application for writ of habeas corpus are cognizable, sustain these claims on the merits, reverse the court of appeals' opinion and dismiss Count I.

## B. Count I violates the Texas Speech or Debate Clause and the common-law doctrine of legislative immunity

The court of appeals erred by refusing to dismiss Count I of the indictment for violating the Texas Constitution's Speech or Debate Clause and the absolute legislative immunity that accompanies it when the Governor is considering or exercising his veto power.[35]

Article III, Section 21 of the Texas Constitution provides that "[n]o member shall be questioned in any other place for words spoken in debate in either House." This is Texas's Speech or Debate Clause, which is similar to it analog in the

---

criminalize acts of political corruption, including the acceptance of a bribe or a promise of a bribe in exchange for the exercise of a veto. Such a prosecution does not trigger any of the separation-of-powers issues that plague this prosecution because the illegal act is the acceptance of the bribe or the promise of the bribe, not the veto itself.

[34] *See* footnote 18, *supra*.

[35] This section addresses claims 5, 6, and 7 as to Count I (i.e., Ground for Review 1, 3 and 4).

37

United States Constitution.[36]   On the few occasions when Texas courts have considered the Texas clause, they have indicated that its scope is the same as the federal clause. *See Canfield v. Gresham*, 17 S.W. 390, 392-93 (Tex. 1891) (*citing Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)); *Bowles v. Clipp*, 920 S.W.2d 752, 758 (Tex. App.—Dallas 1996, writ denied); *see also Tenney v. Brandhove*, 341 U.S. 367, 375 (1951) (noting common purpose of federal and state Speech or Debate Clauses, including Texas's).

Under federal precedents, the Clause is "read 'broadly to effectuate its purposes,'" *Doe v. McMillan*, 412 U.S. 306, 311 (1973), which are "[t]o prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," *id*. at 316 (citation and quotation omitted), and to "free[] the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *Gravel v. United States*, 408 U.S. 606, 618 (1972).  Stated differently, the purpose of the principle is to secure to every member "exemption from *prosecution*, for every thing said or done by him, as a representative, in the exercise of the functions of that office." *Id.* at 660 (quoting *Coffin v. Coffin*, 4 Mass. 1, 27 (1808) (emphasis added)).

The Clause originated as a response to the British Crown's use of criminal

---

[36]    Article I, Section 6, Clause 1 of the U.S. Constitution states in relevant part that "for any Speech or Debate in either House [Senators and Representatives] shall not be questioned in any other Place."

prosecution to harass political opponents in Parliament. *See United States v. Johnson*, 383 U.S. 169, 182 (1966). As noted in *Johnson*, "[t]here is little doubt that the instigation of *criminal charges* against critical or disfavored legislators by the executive in a judicial forum was the chief fear prompting the long struggle for parliamentary privilege in England and, in the context of the American system of separation of powers, is the predominant thrust of the Speech or Debate Clause." *Id.* The Clause therefore naturally implicates separation of powers considerations, as it aims to "preserve the constitutional structure of separate, coequal, and independent branches of government." *United States v. Helstoski*, 442 U.S. 477, 491 (1979).

Borrowing from federal analyses, Texas courts have derived from the Clause a broad doctrine of legislative immunity. *See Perry*, 60 S.W.3d at 859. Not only are oral speech and debate protected, but so are written reports and legislative votes. *See Canfield*, 17 S.W. at 392-93 (*citing Kilbourn*, 103 U.S. at 204); *McMillan*, 412 U.S. at 311. In fact, the Clause protects all communications that are "an integral part of the deliberative and communicative processes" involved in a legislative act, including communications with or among aides. *Gravel*, 408 U.S. at 625; *see also Perry*, 60 S.W.3d at 860-61.[37]

---

[37] Texas governors are not detached legislative gatekeepers, but active participants in legislative discourse. Governors are constitutionally required to "recommend to the Legislature such measures as [they] may deem expedient," Tex. Const. art. IV, § 9, and to explain their

Legislative activity includes a Governor's exercise of the veto power. *See Jessen*, 531 S.W.2d at 598. But the Clause is sufficiently broad to protect other government officials when they engage in "legitimate legislative activity." *Tenney*, 341 U.S. at 376; *see also Perry*, 60 S.W.3d at 860 (holding that the attorney general, comptroller, and land commissioner enjoy legislative immunity for "'legitimate legislative functions" performed while serving on the Legislative Redistricting Board).[38] Legislative activity also includes executive actions involving budgetary and appropriations matters. *See Bogan*, 523 U.S. at 55-56 (affording legislative immunity to city mayor for "introduction of a budget and signing into law an ordinance," a "discretionary, policymaking decision implicating the budgetary priorities of the city" and "formally legislative, even though he was an executive official"); *Shade v. U.S. Congress*, 942 F. Supp. 2d 43, 48 (D.D.C. 2013) (appropriation of funds is "a "core legislative function").[39] Any

---

objections to bills when exercising the veto power. *Id.* § 14. In short, not only does it *permit* communication, the Texas Constitution *requires* communication between the Governor and legislators as an integral part of the legislative process. Such communication contributes to both sound policymaking and an informed electorate.

[38] *See also Camacho v. Samaniego*, 954 S.W.2d 811, 823-24 (Tex. App.—El Paso 1997, pet. denied) (citing *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1194 (5th Cir. 1981), for proposition that absolute legislative immunity extended to a mayor's veto of an ordinance passed by a city council).

[39] To be sure, the protections of the Clause and its accompanying immunity have their limits. They do not extend to actions that are "no part of the legislative process or function," even if performed by legislators. *United States v. Brewster*, 408 U.S. 501, 526 (1972). For example, a legislator may be prosecuted for bribery because "acceptance of the bribe is the violation of the statute, not performance of the illegal promise," making it "[un]necessary to inquire into how [the legislator] spoke, how he debated, how he voted, or anything he did in the chamber or in committee." *Id.* at 526. *See also Mutscher v. State*, 514 S.W.2d 905, 914-15

40

criminal prosecution based on this protected legislative activity is barred. "It is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972). Thus, legislative acts may not themselves be criminalized. *See United States v. Helstoski*, 442 U.S. at 488. Nor may a prosecution proceed if it necessarily depends upon evidence of legislative acts or the motives for them. *See Johnson*, 383 U.S. at 184-85. In fact, evidence of a legislative act may not even be introduced at trial in an otherwise permissible prosecution. *Helstoski*, 442 U.S. at 487-88. This is because the courts have recognized that the "level of intimidation against a local legislator arising from the threat of a criminal proceeding is at least as great as the threat from a civil suit," so that legislative immunity "should be extended to criminal proceedings." *State v. Holton*, 997 A.2d 828, 845, 856 (Md. Ct. Spec. App. 2010), *aff'd*, 24 A.3d 678 (Md. 2011) (quotations and citation omitted). *See also McMillan*, 412 U.S. 306, 312-13 (1973) ("Congressmen . . . are immune from liability for their actions within the 'legislative sphere' even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." (citation

---

(Tex. Crim. App. 1974) (affirming House Speaker's conviction for bribery and upholding the bribery statute because "[t]aking a bribe is, obviously, no part of the legislative process or function; it is not, a legislative act" (quoting *Brewster*, 408 U.S. 527)).

41

omitted)).  Indeed, officials cannot even be required to testify about their legislative activities, regardless of the context in which their testimony is sought. *Perry*, 60 S.W.3d at 858, 861.[40]

This protection is not eviscerated even by allegations of a bad motive.  A charge that legislative conduct was "improperly motivated" is "precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry." *Johnson*, 383 U.S. at 180.  Otherwise, immunity would be held hostage to "a conclusion of the pleader" or "a jury's speculation as to motives."  *Bogan*, 523 U.S. at 54 (observing that the Court had applied immunity even when a legislator "singled out the plaintiff for investigation in order to intimidate and silence the plaintiff and deter and prevent him from effectively exercising his constitutional

---

[40]    Other states provide similar protection in civil, criminal, and quasi-criminal matters. *See, e.g., State v. Dankworth*, 672 P.2d 148, 151 (Alaska Ct. App. 1983) (even in a criminal case, "[o]nce it is determined that [a] legislative function . . . was apparently being performed, the propriety and the motivation for the action taken, as well as the detail of the acts performed, are immune from judicial inquiry") (quoting *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973)); *D'Amato v. Superior Court*, 167 Cal. App. 4th 861 (2008) ("The district attorney acknowledges the principles of legislative immunity . . . but contends immunity applies only to civil suits, and does not extend to criminal prosecutions.  We disagree."); *State v. Neufeld*, 926 P.2d 1325, 1337 (Kan. 1996) ("Congressmen . . . are immune from liability for their actions within the legislative sphere . . . even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." (internal quotation marks omitted)); *Holton*, 997 A.2d at 851 ("we hold that, as a matter of common law, local legislators may invoke that same privilege in a criminal prosecution"); *Irons v. R.I. Ethics Comm'n*, 973 A.2d 1124, 1131 (R.I. 2009) ("as long as [a legislator's] challenged actions, stripped of all considerations of intent and motive, were legislative in character, the doctrine of absolute legislative immunity protects them from such claims"—there, an ethics agency enforcement action). Furthermore, several federal circuits have held that governors *are* protected by absolute legislative immunity for their legislative acts. *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 91-92 (2d Cir. 2007); *Baraka v. McGreevey*, 481 F.3d 187, 196-97 (3d Cir. 2007); *Torres Rivera v. Calderon Serra*, 412 F.3d 205, 212-14 (1st Cir. 2005);

rights" (citing *Tenney*, 341 U.S. at 377)). "[I]t is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Perry*, 60 S.W.3d at 860 (quoting *Bogan*, 523 U.S. at 55). Simply put, "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377. The remedy for those who disagree with a veto, no matter how earnestly, is political, not judicial.[41]

For these reasons, the courts will foreclose attempts to convert inescapably political disputes into criminal complaints. A number of federal cases have required dismissal of grand-jury indictments premised on privileged Speech or Debate materials, thus barring a trial that would require the government to introduce evidence of privileged Speech or Debate materials. For example, in *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992), a former congressman was prosecuted for lying to the grand jury about his knowledge of various money-laundering statutes. *Id.* at 1535-37. To prove his knowledge, the prosecution introduced evidence before the grand jury and at trial about the congressman's activities in Congress, including his activity on a banking committee. *Id.* at 1539-

---

*Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003).

[41]    In *Bogan*, the Supreme Court held that the acts of introducing, voting for, and signing an ordinance eliminating the government office held by a health department administrator, when "stripped of all considerations of intent and motive," were in fact "legislative" because the "ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city." 523 U.S. at 55. Governor Perry's decision to veto an item of appropriation and any announcement by his staff of his intent most certainly reflects a similar "discretionary, policymaking decision implicating the budgetary priorities" of Texas.

40. The court of appeals reversed the congressman's conviction and held that the prosecution violated the Speech or Debate Clause for two reasons: (1) "the AUSA[] question[ed] [the congressman] before the grand jury about his committee memberships" in an effort to show his knowledge of money-laundering statutes, and (2) "reference [was] made to [the congressman's] committee memberships both in the grand jury proceedings and at trial." *Id.* at 1543. The court held that "the remedy for the violations of the privilege is dismissal of the affected counts." *Id.* *See also Johnson*, 383 U.S. at 185 (holding that Speech or Debate material was improperly presented to the grand jury and ordering a new trial "purged of elements offensive to the Speech or Debate Clause"); *Brewster*, 408 U.S. at 527 (holding that, only because a conviction in that case could be sustained without "inquir[y] into the [legislative] act or its motivation," could an indictment of a congressman which referred to legislative acts stand, as "[t]o make a prima facie case under this indictment, the Government need not show any act of [Brewster] subsequent to the corrupt promise for payment," i.e., a bribe).[42]

In *Helstoski v. Meanor*, 442 U.S. at 506-08, the Supreme Court followed the reasoning of *Abney v. United States*, 431 U.S. 651 (1977) and allowed immediate

---

[42] Dismissing an indictment that violates the federal Speech or Debate Clause is also supported by *United States v. Kolter*, 71 F.3d 425 (D.C. Cir. 1995); *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995); *United States v. Zielezinski*, 740 F.2d 727 (9th Cir. 1984); *United States v. Beery*, 678 F.2d 856 (10th Cir. 1982); and *United States v. Renzi*, 686 F. Supp. 2d 956 (D. Ariz. 2010).

interlocutory appeal in a criminal case to assert the immunity conferred by the Speech or Debate Clause of the U.S. Constitution. Critical to the holding was the Supreme Court's conclusion that the Speech or Debate Clause protects legislators "'not only from the consequences of litigation's results but also from the burden of defending themselves,'" *id.* at 508 (quoting *Dombrowski v. Eastland*, 387 U.S. at 85), which right would have been lost if review did not occur prior to a trial. Just as this Court followed Supreme Court precedent on Double Jeopardy in permitting pretrial habeas review, *Ex parte Robinson*, 641 S.W.2d at 554-55 (following *Abney v. United States*, 431 U.S. 651 (1977)), so now it should follow *Helstoski* in this case.[43]

## C. The abuse of official capacity statute is unconstitutionally vague as applied to the veto alleged on the face of the indictment

The court of appeals further erred by refusing to dismiss Count I of the indictment because Section 39.02(a)(2) is unconstitutionally vague. CR46-48.[44]

The Abuse of Official Capacity statute, Tex. Penal Code § 39.02(a)(2),[45] is

---

[43] The underlying basis of *Abney* was that because the Fifth Amendment right not to be put in jeopardy a second time involved "a right not to be tried" and "to "enjoy the full protection of the Clause," the claim "must be reviewable before that subsequent exposure occurs." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 266 (1982) (quoting *Abney*, 431 U.S. at 662). The same principles obviously apply here.

[44] This section addresses claims 1 and 2 as to Count I (i.e., Grounds for Review 1 and 4).

[45] In pertinent part, Abuse of Official Capacity is defined as follows: "A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly . . . misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment." Tex. Penal Code §

45

admittedly a tightly-worded provision with graduated penalties for escalating levels of wrongdoing. But it has no discernible relationship to any conduct alleged in the indictment against Governor Perry. Hence, this statute either does not apply to Governor Perry's alleged conduct at all or is unconstitutionally vague as applied to the facts alleged on the face of the indictment. In either case, Count I should be dismissed.

Prosecution of Governor Perry under Section 39.02(a)(2) violates all three related manifestations of the fair-warning requirement. *See United States v. Lanier*, 520 U.S. 259, 266 (1997). First, the vagueness doctrine would be violated because there was no fair warning that Governor Perry's act of vetoing funding for the PIU would violate that section. Second, the rule of lenity would be violated by an interpretation of the statute bringing Governor Perry's veto within the umbrella of coverage. Third, the prosecution involves an entirely novel construction of these criminal statutes which neither the text of the statutes nor any prior judicial decision has fairly disclosed to be within their scope.

This vagueness is evident in several respects. First, neither Governor Perry nor any other governor could have had fair notice that he was "misus[ing] government property" by vetoing a line-item appropriation, the effect of which was to keep funds *in* the State Treasury rather than allowing funds to be transferred to

---

39.02(a)(2).

46

Lehmberg's office after September 1, 2013. Second, Governor Perry did not have fair notice that he could somehow have "custody or possession" of all the State funds proposed to be expended in an appropriations bill merely "by virtue of [his] office or employment" as governor. As this Court can judicially notice, the funds to be disbursed under the two-year budget commencing September 1, 2013, would not have been collected by that date, let alone by June 14, 2013, the date of the misconduct alleged in Count I of the indictment, because Texas uses a pay-as-you-go system of raising revenue for appropriations.[46] In essence, the special prosecutor's interpretation of Section 39.02(a)(2) would turn the Rule of Lenity— that principle that unclear criminal statutes should be construed in favor of the defendant, *Cuellar v. State*, 70 S.W.3d 815, 819 n.6 (Tex. Crim. App. 2002)—on its head.

---

[46] *See* footnote 32, *supra*.

## Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Governor Perry respectfully prays that this Court reverse the court of appeals' judgment holding that Governor Perry's constitutional claims are not cognizable, find Section 39.02(a)(2) unconstitutional, and dismiss Count I.

Respectfully submitted,

THE BUZBEE LAW FIRM

BAKER BOTTS L.L.P.

/s/ Anthony G. Buzbee
Anthony G. Buzbee
State Bar No. 24001820
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tbuzbee@txattorneys.com
Telephone: 713-223-5393
Facsimile: 713-223-5909

/s/ Thomas R. Phillips
Thomas R. Phillips
State Bar No. 00000102
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4078
tom.phillips@bakerbotts.com
Telephone: 512-322-2565
Facsimile: 512-322-8363

BOTSFORD & ROARK
/s/ David L. Botsford
David L. Botsford
State Bar No. 02687950
1307 West Ave.
Austin, Texas 78701
dbotsford@aol.com
Telephone: 512-479-8030
Facsimile: 512-479-8040

## Certificate of Compliance

I hereby certify that this document contains 9,569 words in the portions of the document that are subject to the word limits of Texas Rule of Appellate Procedure 9.4(i), as measured by the undersigned's word-processing software.

*/s/ David L. Botsford*
David L. Botsford

## Certificate of Service

This is to certify that a true and complete copy of this document has been electronically emailed to Lisa McMinn, State Prosecuting Attorney, Michael McCrum, Attorney Pro Tem, and to Mr. David Gonzalez, Assistant Attorney Pro Tem on the same date it was electronically filed with the Clerk of the Court of Criminal Appeals.

*/s/ David L. Botsford*
David L. Botsford

# TAB 1

## Nine Claims Challenging Count I

1. Section 39.02(a)(2) [of the Texas Penal Code] violates the Fifth and Fourteenth Amendments to the Constitution of the United States as applied because its prohibitions of "misuse" of "government property . . . that has come into the [Governor's] custody or possession" is unconstitutionally vague as a matter of law if extended to a mere gubernatorial veto of any appropriation of State funds.

2. Section 39.02(a)(2) violates Article I, Sections 10 and 19 of the Texas Constitution as applied because its prohibition of "misuse" of "government property . . . that has come into the [Governor's] custody or possession" is unconstitutionally vague as a matter of law if extended to a mere gubernatorial veto of any appropriation of State funds.

3. Section 39.02(a)(2) is unconstitutional as applied because it infringes upon the Governor's absolute constitutional right and duty to approve or disapprove "items of appropriation" under Article IV, Section 14 of the Texas Constitution.

4. Section 39.02(a)(2) is unconstitutional as applied because it violates the separation of powers between the various departments of government that is guaranteed to the People by Article II, Section 1 of the Texas Constitution.

5. Because a governor acts in a constitutionally-prescribed legislative capacity in vetoing legislation, Section 39.02(a)(2) is unconstitutional as applied because it violates the protection afforded by the Speech and Debate Clause of Article III, Section 21 of the Texas Constitution.

6. Because the Governor was acting in a legislative capacity in vetoing the appropriation at issue, Count I of the indictment is void because it is necessarily based on evidence privileged by the Speech and Debate Clause of Article III, Section 21 of the Texas Constitution.

7. Because the Governor was acting in a legislative capacity in vetoing the appropriation at issue, trial on Count I of the indictment is barred as a matter of law because the State could only sustain its burden, if at all, by introducing evidence privileged by the Speech and Debate Clause of Article III, Section 21 of [t]he Texas Constitution.

50

8. Section 39.02(a)(2) is unconstitutional as applied because Governor Perry had the right to do any and all acts of which he is charged in the exercise of his rights under the Free Speech guarantee of the First Amendment to the Constitution of the United States.

9. Section 39.02(a)(2) is unconstitutional as applied because Governor Perry had the right to do any and all acts of which he is charged in the exercise of his rights under the Free Speech guarantee of Article I, Section 8 of the Texas Constitution.